[No. 14571.  In Bank. — April 2, 1892.]

# LOUIS KAUFFMAN, APPELLANT, *v.* JOSEPH MAIER ET AL., RESPONDENTS.

APPEAL — REVIEW OF ORDER GRANTING NEW TRIAL — GROUNDS OF ORDER. — Upon an appeal from an order granting a new trial, the appellate court will review the entire record upon which the order was based, and if the record discloses any error which would have justified the trial court in making the order, the order will be affirmed, irrespective of the particular ground given by such court, whether in its opinion or by a statement in the order itself.

ID. — LIMITATION OF RULE — REVIEW OF CONFLICTING EVIDENCE. — The foregoing rule has a limitation in cases where one of the grounds upon which the new trial is sought is the insufficiency of the evidence to justify the verdict or decision. If in such a case the trial court, in its order granting a new trial, excludes this as a ground of its action by direct language, the appellate court will accept the conclusion of the trial court, and not re-examine the evidence.

NEGLIGENCE — MASTER AND SERVANT — DEFECTIVE SHAFT — CONTRIBUTORY NEGLIGENCE — VOLUNTARY ACT OF SERVANT OUT OF SCOPE OF EMPLOYMENT — NONSUIT. — A servant employed in a malt-room was engaged in cleaning the malt-elevator, and having an endless towel upon his shoulder, which impeded him in his work, threw it over the projecting end of a shaft, about six feet above the floor, the end of which had been battered by hammering, so that its edges were jagged and rough, and the engine was afterwards started, causing the shaft to carry the towel around with it, and he, thinking the towel, in its movements, might interfere with his work beneath the shaft, attempted to remove it, and in so doing was caught by the shaft and injured. The act of the servant in hanging the towel upon the shaft had no connection with the service for which he was employed, but was his voluntary act, done by him for his own convenience. *Held*, that he is not entitled to recover from the master for the injury received by him as the result of such act, and that a nonsuit should be granted in a suit by the servant, where the testimony for the plaintiff shows that the injury was so received.

ID. — DEFECTIVE MACHINERY EXTRANEOUS TO EMPLOYMENT — PROXIMATE CAUSE OF INJURY. — The right of a servant to recover from the master for injuries received by him from defective machinery depends upon the negligence of the master in respect to the machinery upon which the ser-

| 94 | 269 |
| --- | --- |
| 96 | 181 |
| 94 | 269 |
| 98 | 279 |
| 94 | 269 |
| 100 | 28 |
| 94 | 269 |
| 102 | 331 |
| 102 | 358 |
| 94 | 269 |
| 105 | 523 |
| 94 | 269 |
| 112 | 226 |
| 94 | 269 |
| 113 | 50 |
| 113 | 481 |
| 94 | 269 |
| 115 | 14 |
| 94 | 269 |
| 119 | 28 |
| 119 | 332 |
| 119 | 641 |
| 94 | 269 |
| 122 | 591 |
| 94 | 269 |
| a129 | 503 |
| 94 | 269 |
| f127 | 302 |
| 127 | 605 |
| 94 | 269 |
| 132 | 74 |
| 94 | 269 |
| 133 | 12 |
| 94 | 269 |
| 134 | 327 |
| 134 | 496 |
| 94 | 269 |
| 136 | 311 |
| 94 | 269 |
| 141 | 69 |
| 141 | 175 |
| e141 | 231 |
| 141 | 232 |
| 94 | 269 |
| 143 | 391 |
| f144 | 64 |
| 94 | 269 |
| 147 | 714 |
| 94 | 269 |
| 148 | 38 |
| e148 | 156 |
| 148 | 428 |
| 94 | 269 |
| d149 | 133 |
| 149 | 134 |
| 149 | 778 |

vant is employed to work, and cannot be maintained by showing negligence on the part of the master in reference to other machinery with which the servant's employment has no connection, unless such machinery is in some way incidental to the service in which he was engaged, and was the proximate cause of the injury.

ID. — DUTY OF MASTER — OBJECT OF MACHINERY — USE FOR UNCONTEMPLATED PURPOSE — HANGING TOWEL UPON SHAFT — RISK OF SERVANT. — A master is under no obligation to his servant to make machinery suitable for a purpose not designed, or which could not have been contemplated by the master, and is not liable for an injury received by the servant from the machinery while used for his own purposes as a place on which to hang a towel for his convenience; but the servant assumes the risk of such use, and of any attempt to take such towel from the shaft.

ID. — PROXIMITY OF SHAFT TO PLACE OF WORK. — The fact that the shaft upon which the servant hung the towel was close to the place where he was working would not affect the liability of the master, although it may have determined the servant's selection of it as a place on which to hang the towel. ·

ID. — EVIDENCE — KNOWLEGE OF MASTER AS TO CONDITION OF SHAFT — MOTIVES AND OPINION OF INFORMANT. — In an action by the servant against the master for injuries alleged to have been received from a defective shaft, although it is proper for the court, for the purpose of showing that the master had knowledge of the condition of the shaft, to allow a witness to testify that previous to the injury to the servant he had informed the foreman of the condition of the shaft, yet it is error to allow the witness to testify as to the motives which prompted him to inform the foreman, and as to his own opinion concerning the shaft.

ID. — TESTIMONY OF EXPERTS — DANGER FROM ROUGH END OF PROJECTING SHAFT — QUESTIONS FOR JURY. — In such case it is error for the court to admit expert testimony as to whether it is more dangerous for a shaft having a rough surface or end to project into the room than it would be if the shaft were smooth, and as to whether a towel could be more safely taken from a smooth revolving shaft than a jagged and rough one. Such matters are not the proper subject of expert testimony, but are properly questions of fact for the jury to determine, either from their own experience in matters of common observation, or from all the evidence in the case.

ID. — VERBAL EVIDENCE OF ADMISSIONS — CAUTION OF JURY — INSTRUCTION AS TO MATTER OF FACT. — Where evidence was given at the trial tending to show that shortly after the injury the plaintiff had made statements to the effect that it was the result of his own fault, and that the accident had been brought about by a different cause from that shown at the trial, it is for the jury to say, as an inference of fact, whether or not the evidence was liable to be erroneous, and was therefore to be received with caution, and not a presumption or conclusion of law to be declared by the court; and it is error, in charging the jury as to matter of fact, to . instruct them that verbal evidence of such admissions is liable to be erroneous, and should be received by the jury with great caution; and the error in such instruction is not obviated by telling the jury to give to the evidence the consideration to which it is entitled.

ID. — PROVINCE OF JURY — INVASION BY COURT. — It is the province of the jury to weigh the evidence and find the facts in a case, and an instruction by the court that any particular evidence which has been laid before them is not entitled to receive weight or consideration from them is an invasion of such province.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial.

The facts are stated in the opinion of the court.

*Max Loewenthal, George J. Denis,* and *J. L. Murphy,* for Appellant.

An order granting a new trial should be reversed as readily as an order denying a new trial, if it appears that the order was granted through a misapprehension of the law. (*Schramm* v. *Southern Pacific Co.,* 87 Cal. 426.) A right to a nonsuit is purely a question of law, and reviewable as such. (*Cravens* v. *Dewey,* 13 Cal. 40; *Donahue* v. *Gallavan,* 43 Cal. 573.) In considering the correctness of the ruling of the court on the motion for a nonsuit, we must accept as proven every fact which the evidence tended to prove, and which was essential to be proven to entitle the plaintiff to a recovery upon the cause of action stated in the complaint. (*Dow* v. *Gould etc. S. M. Co.,* 31 Cal. 651; *McIntyre* v. *Trautner,* 63 Cal. 429.) When contributory negligence is a question for the jury, nonsuit on that ground is not justified. (*Strong* v. *Sacramento etc. R. R. Co.,* 61 Cal. 326; *McQuilken* v. *Central Pacific R. R. Co.,* 64 Cal. 465.) Judgment of nonsuit can be supported only on the ground on which it was rendered. (*Minturn* v. *Burr,* 16 Cal. 110; *Simpson* v. *Applegate,* 67 Cal. 471.) In order to justify the withdrawal of the case from the jury, the facts of the case should not only be undisputed, but the conclusion to be drawn from those facts indisputable. (2 Thompson on Negligence, p. 1236, sec. 11; p. 1235, sec. 10; *Detroit etc. R. R. Co.* v. *Van Steinburg,* 17 Mich. 99; *Davies* v. *Oceanic Steamship Co.,* 89 Cal. 280; *Railroad Co.* v. *Stout,* 17 Wall. 657.) Negligence of the defend-

ants was gross in omitting all appliances for safety in a situation absolutely of great and needless exposure to injury. The master is bound to inform his servants of facts within his knowledge affecting the safety of the servant in the service to be performed when the latter is ignorant of the facts. (*Nadau* v. *White River Lumber Co.*, 76 Wis. 120; 20 Am. St. Rep. 29; *Baxter* v. *Roberts*, 44 Cal. 187; 13 Am. Rep. 160; *Coombs* v. *New Bedford Co.*, 102 Mass. 573; 3 Am. Rep. 506; *O'Connor* v. *Adams*, 120 Mass. 427; *McGowan* v. *La Platte M. & S. Co.*, 3 Mc-Crary, 393; *Smith* v. *Oxford Co.*, 42 N. J. L. 467; 36 Am. Rep. 535; *Stralendorf* v. *Rosenthal*, 30 Wis. 675; *Kranz* v. *Long Island R. R. Co.*, 123 N. Y. 1; 20 Am. St. Rep. 716.) The servant only takes risks of what are called seen dangers. If the master knows or ought to know of defects in the machinery where he sets his servant to work, it is his duty to inform the servant, and if he fails in this duty, he will be liable for any injury that may result from such failure. (See cases cited, and 2 Thompson on Negligence, 980; Deering on Negligence, 197; Wood on Master and Servant, sec. 349; *Buzzell* v. *Laconia M. F. G. Co.*, 48 Me. 113; 77 Am. Dec. 223.) It is also the duty of the master to furnish a reasonably safe place for his servant to work in, and if he fails to perform this duty, he will be liable for any injury that may result therefrom. (*Kranz* v. *Long Island R. R. Co.*, 123 N. Y. 1; 20 Am. St. Rep. 716; *Nadau* v. *White River Lumber Co.*, 76 Wis. 120; 20 Am. St. Rep. 29; *Atlanta Cotton Factory Co.* v. *Speer*, 69 Ga. 137; 47 Am. Rep. 750; *Fairbank* v. *Haentzsche*, 73 Ill. 236; *Hill* v. *Gust*, 55 Ind. 45; *Coombs* v. *New Bedford Co.*, 102 Mass. 572; 3 Am. Rep. 506; *Hulehan* v. *Green Bay etc. Co.*, 58 Wis. 319; *O'Connor* v. *Adams*, 120 Mass. 427; *Swoboda* v. *Ward*, 40 Mich. 420; *Corcoran* v. *Holbrook*, 59 N. Y. 517; 17 Am. Rep. 369; *Honor* v. *Albrighton*, 93 Pa. St. 475.) The servant has the right to presume, in the absence of notice to the contrary, and except as to matters that come within the range of his own peculiar skill, that the master will perform the duty imposed upon him of furnishing

proper, adequate, and perfect implements and appliances necessary for the performance of any duty required of the servant. (*Gibson* v. *Pacific R. R. Co.*, 46 Mo. 163; 2 Am. Rep. 497; *Kain* v. *Smith*, 89 N. Y. 375.) The admission of expert testimony was not error, as it is well settled that questions relating to machinery, and the construction or operation of the same, are proper subjects of expert testimony. (7 Am. & Eng. Ency. of Law, p. 509, sec. 28, and note; *Montgomery* v. *Gilmer*, 83 Ala. 116; 3 Am. St. Rep. 695; *Evarts* v. *Middleburg*, 53 Vt. 626; *Taylor* v. *French*, 47 Iowa, 662; *Sheldon* v. *Booth*, 50 Iowa, 209; *Fitz* v. *Cream City R. R. Co.*, 59 Wis. 323; *Sowden* v. *Idaho Quartz M. Co.*, 55 Cal. 443; Black on Accidents, 48–51; Lawson on Expert and Opinion Evidence, rule 22; *Taylor* v. *Monroe*, 43 Conn. 36; *Hammond* v. *Woodman*, 41 Me. 177; 66 Am. Dec. 219, and note; *People* v. *Levine*, 85 Cal. 39; *Stead* v. *Worcester*, 150 Mass. 241; *Transportation Line Co.* v. *Hope*, 95 U. S. 297.) The admission or rejection of expert testimony is very much within the discretion of the trial court, and no reversal on that ground will be had, except where the injury is apparent. (*People* v. *Levine*, 85 Cal. 39; *Sorg* v. *First Ger. Cong.*, 63 Pa. St. 156.) The following cases were also cited generally upon the question of negligence and contributory negligence: *Magee* v. *North Pacific Coast R. R. Co.*, 78 Cal. 430; 12 Am. St. Rep. 69; *Colbert* v. *Rankin*, 72 Cal. 197; *Railroad Co.* v. *Stout*, 17 Wall. 651; *Tetteron* v. *St. Joseph R'y Co.*, 98 Mo. 74; 14 Am. St. Rep. 617; *Barry* v. *Hannibal etc. R'y Co.*, 98 Mo. 62; 14 Am. St. Rep. 610; *Ingerman* v. *Moore*, 90 Cal. 410.

*Hutton & Swanwick*, and *Chapman & Hendrick*, for Respondents.

Where a new trial is granted, and it does not appear upon what ground it was granted, by the trial court, the order will be affirmed if there is any ground upon which the court could rightfully have granted it. (*Grant* v. *Moore*, 29 Cal. 647, 648; *Coghill & Co.* v. *Marks*, 29 Cal. 677; *In re Crozier*, 74 Cal. 181; *Thompson* v. *Felton*, 54 Cal. 554;

*McCarthy* v. *Loupe*, 62 Cal. 303.) The court erred in permitting expert witnesses to testify, against the defendants' objection, as to the dangerous condition of the machinery. Experts are not permitted to give an opinion as to an inference from facts within the ordinary range of experience. (*Shafter* v. *Evans*, 53 Cal. 32; *Enright* v. *San Francisco etc. R. R. Co.*, 33 Cal. 236, 237; 1 Wharton on Evidence, secs. 436, 509; *Nosler* v. *Chicago etc. R. R. Co.*, 73 Iowa, 268; *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48.) An expert is not permitted to give an opinion upon an issue in the case. It is upon the issue that the opinion of the jury is to be given, and when the facts are all laid before them, it is for them to draw the inference, and not the experts. (*Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48. See *Conner* v. *Stanley*, 67 Cal. 316.) A master is not liable for injuries of the employee if the latter knew or had means of knowledge of the defects of the machinery, and of the dangers and risks likely to result from its use. (*Sanborn* v. *Madera Flume etc. Co.*, 70 Cal. 261; *Murphy* v. *Greely*, 146 Mass. 196; *Palmer* v. *Harrison*, 57 Mich. 182; *Iron Ship Bldg. Works* v. *Nuttall*, 119 Pa. St. 149; *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48.) The order of one in authority to incur danger and risk will not excuse the servant or make the master liable. (*Sweeney* v. *Berlin etc. Envelope Co.*, 101 N. Y. 520; 54 Am. Rep. 722; *Atlas Engine Works* v. *Randall*, 100 Ind. 293; 50 Am. Rep. 798.) If the circumstances are such that the servant could not, if he exercises his reason, but know of the danger, or if the danger is such as to suggest itself to a man of ordinary intelligence, he must know it, and he must govern himself with the prudence which the circumstances require if he undertakes the service at all. (*Nelson* v. *Allen Paper Car-wheel Co.*, 29 Fed. Rep. 840.) Where the negligence relied on consists of defective machinery, the question is as to the fitness of the machinery for the purposes for which it was intended, and its fitness for other uses is wholly immaterial. (*Durgin* v. *Munson*, 9 Allen, 397; 85 Am. Dec. 770; *Hickey* v.

*Taaffe,* 105 N. Y. 26.) When the plaintiff applied the defendants' machinery to purposes for which it was never intended by them, but was making use of it for his own purpose, he assumed the entire risk himself, and the negligence of the defendant became of no consequence whatever. (*Felch* v. *Allen,* 98 Mass. 572.)

HARRISON, J. — The plaintiff brought this action against the defendants to recover damages for personal injuries alleged to have resulted from their negligence. He was in their employ at the time of the injury, and the negligence charged upon them was their permitting the shaft of a wheel to protrude into the room where he was at work, by reason of which his sleeve was caught upon the jagged end of the shaft, causing him to be carried around it, whereby his arm was so injured as to require amputation. The plaintiff recovered judgment in the court below, and a new trial was granted upon the motion of the defendants, and from this order the plaintiff has appealed. In their statement upon the motion for a new trial, the defendants have assigned various errors of law on the part of the court, as well as many particulars in which the evidence is claimed to be insufficient.

1. In its order granting a new trial, the court included the following as a part thereof, viz.: " The new trial is hereby granted upon the following ground specifically, and upon no other ground or grounds, no error being by this court deemed to have occurred at the trial on account whereof a new trial should be granted to defendants, except such ground above referred to, which ground is as follows, to wit: The court erred in denying defendants' motion for a nonsuit, which motion should have been granted on the sole ground that the placing of the towel on the shaft, as shown by the evidence, constituted such contributory negligence on his part as to preclude him from recovering in this action. On all other grounds embraced in said motion, save said ground aforesaid, said motion for a new trial is denied."

The proposition of the appellant, that this court is limited upon this appeal to a consideration of the grounds specified in the order granting the new trial, is untenable. A party has the right to move for a new trial upon any or all of the grounds permitted by the statute, and if the record on which his motion is based discloses more than one ground for which a new trial should be granted, the court cannot, by stating in its order that the motion is granted upon one ground only, and denied upon the others, deprive the other party of the right to a review by this court of the entire record. The action of the court below is limited to granting or refusing a new trial, and except in those cases in which it is justified in limiting the new trial to one or more designated issues, the effect of an order granting a new trial is to place the cause in the position it held before any trial had been had. Upon an appeal from that order, this court will review the entire record upon which the order was based, and if there be found any error in the record which would have justified the court in making the order, the order will be affirmed, upon the same principles that an order sustaining a demurrer to a defective complaint will be sustained, even though the ground upon which the trial court sustained it may be held untenable. A motion for a new trial is a proceeding in the nature of a new action wherein the statement or bill of exceptions corresponds to the complaint, and the specifications of error to a demurrer thereto, and the action of the trial court in sustaining the motion is to be treated on the same principles. If there be any grounds upon which its action can be upheld, the order will be sustained, irrespective of the particular ground given by that court, whether in an opinion or by a statement in the order itself.

A contrary rule might work great injustice. If a new trial is granted, the former decision is set aside, and the party whose motion has prevailed is not "aggrieved," and has no ground for an appeal. By the order granting the new trial the judgment is vacated, and the cause is

in the same condition as when the issues were joined. But if upon an appeal from that order the action by this court is limited to a review of merely the ground designated by the lower court, and that ground should be held insufficient, the moving party would be deprived of the new trial to which the record might show that he is manifestly entitled.

This rule has a limitation in cases where one of the grounds upon which the new trial is sought is the insufficiency of the evidence to justify the verdict or decision. If in such a case the trial court, in its order granting a new trial, excludes this as a ground of its action by direct language, and the record shows that there was a conflict of evidence, this court, upon the same principles that cause it to affirm an order granting or denying a new trial upon that ground, will accept the conclusion of the trial court, and not re-examine the evidence.

2. The plaintiff was employed in the malt-room, and at the time of the injury was engaged in cleaning the elevator, — an endless belt, with buckets attached thereto for carrying the malt from this room to the upper portion of the building. This elevator passed into a hopper about a foot in depth below the surface of the floor, into which the malt was shoved, in order that it might be taken up by the buckets attached to the elevator, and was carried around a wheel whose shaft, an inch and a half in diameter, and about six feet above the floor of the room, projected into the room about eighteen inches beyond the timbers upon which it rested. The end of the shaft had been battered by hammering, so that it had a crown a little larger than the shaft itself, with its edges jagged and rough. On this day, after the malt that had been spread upon the floor had been all carried to the upper part of the building, the plaintiff commenced to clean the elevator, and having an endless towel upon his shoulder, which impeded him in his work, he threw it over the projecting end of the shaft, and went across the room to get a broom. After he left, the

engine started, and on his return he saw the towel going around with the shaft, and as he was to work directly under the shaft, thinking that the towel, in its movements, might interfere with his work, he attempted to remove it, and in so doing was in some way caught by the shaft, and sustained the injury complained of.

At the close of the plaintiff's case the defendants asked for a nonsuit upon the ground that the evidence showed that the injury was not the result of any negligence on their part, but resulted solely from an act of the plaintiff unconnected with his employment.

The plaintiff's right to recover from the defendants for injuries received by him from defective machinery depends upon the negligence of the defendants in respect to the machinery upon which he was employed to work, and cannot be maintained by showing negligence on their part in reference to other machinery with which his employment had no connection, unless such machinery was in some way incidental to the service in which he was engaged. The fact that certain machinery furnished by an employer is defective does not furnish a basis for recovery for an injury, unless that machinery is the proximate cause of the injury. The negligence for which the employer is held responsible is his failure to supply his employee with suitable machinery for the service for which he is employed; but if that machinery is sufficient, it is no ground of action that other machinery not furnished for his service is defective, or that the employee makes use of the machinery which is furnished him in a mode unauthorized by his employment, or for a purpose not contemplated by the employer. "If the servants undertake to use machinery or instruments for purposes for which they were not designed, and for which the employer had no reason to suppose they would be used, it is their own fault or folly if harm comes from it." (*Felch* v. *Allen*, 98 Mass. 575.)

The act of the plaintiff in hanging the towel upon the shaft had no connection with the service for which he

was employed, but was an act done by him for his own convenience, and in which he voluntarily selected the means by which he would subserve that convenience. The projecting shaft was not a part of the machinery with which his service was connected, and was never intended for the use to which he applied it. Even if its condition was such that the defendants would have been liable for an injury sustained by one of their employees in case he had accidentally come in contact with it while engaged in the service for which he was employed, that condition does not establish any negligence on their part towards the plaintiff in the present case. The plaintiff was not injured by any accidental contact with it while engaged in his employment, but his injury was the result of an unauthorized act of his own, which he did for his own convenience, and at his own risk. He was looking for a place on which to hang his towel, and seeing this projection, availed himself of it as being the most convenient. The defendants cannot be held liable for the injury received in taking it off, any more than if he had thrown it across a saw, or hung it upon a sharp hook, and been injured in its removal. Not being under the necessity of making use of the shaft for any purpose connected with his employment, whatever risk attended his selection of it for his own purposes was a risk assumed by himself. As his selection of it as a place on which to hang his towel could not have been contemplated by the defendants, they were under no obligation to make it suitable for that purpose, and cannot be held liable for the injury he sustained therefrom. (See *Pennsylvania Co.* v. *Lynch*, 90 Pa. St. 333; *Pittsburg R. R. Co.* v. *Sentmeyer*, 92 Pa. St. 276; 37 Am. Rep. 684; *Union Pacific R'y Co.* v. *Estes*, 37 Kan. 736; *Cahill* v. *Hilton*, 106 N. Y. 512; *Jenney Electric Light Co.* v. *Murphy*, 115 Ind. 571; *St. Louis etc. Works* v. *Burke*, 12 Ill. App. 369; Shearman and Redfield on Negligence, sec. 207.)

The proximity of the shaft to the place where he was working was but an incident, and does not affect the liability of the defendants. That proximity doubtless

determined his selection of it as the place on which to hang the towel, but as this was a use of the shaft never intended by the defendants, its selection by him for such use cannot render them liable for the injury, any more than if it had been at the end of the room opposite to the place in which he was at work. When, therefore, it appeared from the testimony of the plaintiff that the injury received by him resulted from his voluntary act, unconnected with the service for which he was employed, the court should have granted the nonsuit asked by the defendants, and its order granting a new trial for the error committed in refusing this motion must be affirmed.

3. For the purpose of showing that the defendants had knowledge of the character of the shaft, the witness Geiger was allowed to testify that previous to the injury to the plaintiff he had informed the foreman, Geisner, of its character. He was then asked: "What made you tell August Geisner?"—to which objection was made by the defendants. The court reserved its ruling upon the objection, and allowed the witness to answer, who said: "I told Geisner that the shaft was of no value there, and it should be cut off, and it was said then that I had nothing to say about it, and it was left as of yore. As foreman, it was Geisner's business to look out and do what was stated to him, but nothing was done there. He was the head man in the malt-house." After the answer had been given, the court overruled the objection to the question, and allowed the testimony to remain.

The reason for permitting this witness to give testimony of what he had told Geisner was merely that the knowledge of the defendants concerning the condition of the shaft might be shown as a fact from which their negligence could be inferred, but the motives which prompted the witness to inform the foreman, as well as the opinions of the witness concerning the shaft, were immaterial, and should not have been allowed in evidence.

4. A witness, Ekman, having been shown to be a

machinist, and conversant with machinery, was asked the following question:

" Q. If that shaft on the end had been pounded or battered, or was in a battered or splintered condition, — that is, having something in the nature of a crown that made it wider there than it was in farther, nearer the wall, — would that make it dangerous, or not?" To which he answered: "A. If the shaft was battered or spilt or splintered, in motion it would be dangerous."

Also the following question: —

" Q. If this shaft was smooth, and a towel had been hung upon it, and it in motion, would there be any danger in drawing that towel off ? " To which he answered: " A. If the shaft is smooth, and the towel hung on the shaft in motion, it would not be dangerous to take it off. If the shaft were not smooth, it is likely to come in contact with clothing, and if it comes in contact with clothing, will certainly wind the clothing up."

Another witness, Johnson, was asked: —

" Q. What is your opinion as to whether a shaft protruding about eighteen inches, at the height mentioned by him, into a room where workmen were working, against which they might come in contact, if the surface of the same is jagged, rough, and broken, whether it is dangerous or not? " To which he answered: " A. It is."

" Q. Why is it so? A. It is very likely to catch the clothing of the operator."

These questions were objected to by the defendants, upon the ground that they were incompetent, irrelevant, and immaterial, and not a subject of expert testimony, but their objections were overruled.

The court erred in not excluding this testimony. An answer to the questions did not involve the knowledge of any science or art, and was not the subject of testimony by an expert in machinery. The facts sought to be shown by the questions did not involve a knowledge of the construction or working of machinery, or in any respect depend upon such knowledge. Whether it is dangerous for a shaft with a rough surface or end to pro-

ject into a room where there are workmen who may come into contact with it is not in any case to be determined by expert testimony, but depends in every instance upon the circumstances of the particular case, and must be determined by the jury from all the facts of that case. Whether a towel can be safely taken from a smooth revolving shaft is a matter of common observation, and is not to be determined by one who is an expert in machinery, any more than by an expert in any other branch of knowledge. Such questions are to be determined by the jury themselves, either from their own experience in matters of common observation, or from all the evidence in the case, and cannot be asked of witnesses, even if such witnesses are experts in some particular art or science. (*Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 60.) If the court permits the jury to be influenced by the judgment of such witnesses, it deprives the litigants of their right to have the jury render its verdict upon the facts in the case, and to this extent substitutes the judgment of the expert for what should be the judgment of the jury.

5. Evidence was given at the trial tending to show that shortly after the injury the plaintiff had made statements to the effect that it was the result of his own fault, and that the accident had been brought about by a different cause from that shown at the present trial. In its instructions to the jury, the court said: " The court instructs the jury that although parol proof of the verbal admissions of a party to a suit, when it appears that the admissions were understandingly and deliberately made, often afford satisfactory evidence, yet, as a general rule, the statements of the witnesses as to the verbal admissions of a party should be received by the jury with great caution, as that kind of evidence is subject to much imperfection and mistake. The party himself may have been misinformed, or may not have clearly expressed his meaning, or the witness may have misunderstood him; and it frequently happens that the witness, by unintentionally altering a few expressions really used, gives an

effect to the statement completely at variance with what the party did actually say.   But it is the province of the jury to weigh such evidence, and give it the consideration to which it is entitled, in view of all the other evidence in the case."

In thus instructing the jury, the court disregarded the provision of the constitution that "judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

While it is a matter of common knowledge that the statements of a witness as to the verbal admissions of another are liable to be erroneous, and for that reason should be received with caution, yet such conclusion is only an inference of fact which must be made by the jury, and is not a presumption or a conclusion of law to be declared by the court.   The reasons which are to be urged in favor of receiving such statements with caution are based upon human experience, and vary in strength and conclusiveness with the facts and circumstances of each case, and their sufficiency in any particular case is an inference which the reason of the jury makes from those facts and circumstances; but there is no rule of law which directs the jury to invariably make such an inference from the mere fact that the proof of the admission is by oral testimony.   That deduction called a presumption which the law expressly directs to be made from particular facts is uniform, and not dependent upon the varying conditions and circumstances of individual cases.   To weigh the evidence and find the facts in any case is the province of the jury, and that province is invaded by the court whenever it instructs them that any particular evidence which has been laid before them is or is not entitled to receive weight or consideration from them.   (*People* v. *Walden*, 51 Cal. 588; *People* v. *Fong Ching*, 78 Cal. 173; *Mauro* v. *Platt*, 62 Ill. 450; *Commonwealth* v. *Galligan*, 113 Mass. 202; *McNeil* v. *Barney*, 51 Cal. 603; *People* v. *Dick*, 34 Cal. 666.)

The instruction above quoted is, in substance, an argument to the jury with "respect to matters of fact"

that had been presented at the trial, and a comment by the court upon the weight which they should give to that testimony. Whether the facts and circumstances proved in the case were sufficient to cause the reason of the jury to make this inference was fair matter of argument for the counsel of the respective parties; but the court forsook its judicial position when it assumed the office of commenting upon the weight and credibility of this evidence. The closing paragraph in the instruction, to the effect that it was for the jury to give to the evidence the consideration to which it was entitled, did not obviate the error, as by its remarks the court had, in substance, said to them that as matter of law the evidence was not entitled to any great consideration.

The order is affirmed.

SHARPSTEIN, J., GAROUTTE, J., and MCFARLAND, J., concurred.

Rehearing denied.