[Civ. No. 24323.   First Dist., Div. Two.   Aug. 27, 1968.]

SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT, Plaintiff, v. EDWARD J. McKEEGAN et al., Defendants and Respondents; ARNOLD L. SANTUCCI et al., Defendants and Appellants.

Breed, Robinson & Stewart and James R. McCall for Defendants and Appellants.

Tinning & DeLap, Dana Murdock and Robert N. Sanford, Jr., for Defendants and Respondents.

TAYLOR, J.—This appeal by the lessees (Arnold and Vida L. Santucci) from a conditional order granting a new trial to the lessors (McKeegan, Henry and McKell) after a jury trial to apportion a condemnation award in the stipulated amount of $150,000, presents a question of first impression under the 1965 amendments to section 657 of the Code of Civil Procedure as construed in *Mercer* v. *Perez,* 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315], and *Treber* v. *Superior Court,* 68 Cal.2d 128 [65 Cal.Rptr. 330, 436 P.2d 330].

A chronology of the pertinent events is necessary for an understanding and discussion of the issues presented. On October 27,.1965, the San Francisco Bay Area Rapid Transit District filed its complaint in eminent domain to condemn a parcel at 19th Street and MacDonald Avenue in Richmond, which included the two concrete block buildings owned by the

lessors and occupied by the lessees for the operation of their automatic car wash and brake clinic. The total fair market value of the real and personal property condemned was stipulated to be $150,000. The apportionment of this amount was submitted to a jury, pursuant to Code of Civil Procedure section 1246.1.

The lease of the parties for a period of 25 years beginning September 1, 1955, and ending on August 31, 1980, was subject to an option to renew for 10 years at a rental to be agreed upon at the time of the exercise of the option. The lease provided that the premises could be used only for a car wash and brake shop and that all trade fixtures installed at the expense of the lessees could be removed by them.

The lessees were required to pay all of the taxes and expenses in addition to the monthly rental. The monthly rental consisted of: (1) a minimum monthly rental of $550 ($350 for the car wash and $200 for the brake repair clinic); and (2) a percentage rental equal to 5 percent of all gross sales of the car wash over and above $7,000 a month, and 5 percent of all gross sales of the brake clinic over and above $4,000.

The lessees acquired their interest (the lease and the trade fixtures) in May 1963, from one Wooster, for $81,500. As $6,500 of this amount was specifically for goodwill and a covenant not to compete, in 1963 the lessees paid $75,000 for the interest subsequently condemned. In August 1964, the lessees acquired new wheel washing equipment for $5,400. The lessees, on the basis of the above figures, testified that the fair market value of their interest as of October 27, 1965, was $81,000.[1]

The car wash and office equipment had been acquired new in 1955 for $18,000 and were still in good condition. The brake clinic equipment was bought new in 1960 for $4,437.20. In 1962, the "cash flow"[2] from both businesses was $33,000.

The lessors' experts valued the personalty at $3,500-$4,000, a figure apparently representing the salvage value of the equipment; they estimated its replacement cost at $24,000-$25,000. Another expert for the lessors testified that, excluding the personalty, the fair market value of the land and

---

[1]In his closing argument, the lessees' attorney explained the computation as follows: $75,000 plus $5,400 for the new equipment plus a small sum for the increase in value.

[2]This amount was explained as remaining after the expenses of the business, including wages, had been paid but before any of the payments on the property had been made.

improvements belonging to the lessors was $124,000; that of the leasehold, $17,350. At the end of 1962 or beginning of 1963, one of the lessors purchased his one-fourth interest for $6,000 plus his share of the $8,000-$10,000 loan then outstanding, or a total of about $8,000-$8,500. Another lessor testified that the income from the brake shop never exceeded the monthly $200 minimum, while the car wash exceeded the monthly minimum 5-6 months of the year. In 1965 and 1966, business fell off because the redevelopment and construction in the area changed some of the access routes.

The lessees' expert testified that the terms of the lease were very favorable compared to similar leases in the area. For example, most of the minimum monthly rentals for car washes were at least $500, and the percentage rental was the second lowest found. The percentage provisions of the other leases ranged from 16 to 18 percent.

The trial court instructed the jury that in finding the lessees' compensable interest, they were to subtract the reserved rent[3] from the fair market value of the lessees' interest, and were not to consider for any purpose the option to renew or extend the term of the lease. After the jury returned a verdict finding that the lessees and lessors were each entitled to $75,000, the lessors moved for a new trial on grounds of insufficient evidence, verdict against the law, errors in law and excessive damages.

At the hearing of the motion for a new trial on November 3, 1966, the court noted that it did not think the 15-year remainder on the lease could be worth half the value of the fee. The lessors took the position that the maximum value of the lessees' total interest was around $25,000.

At the conclusion of the hearing, the trial court made a minute order conditionally granting the motion for a new trial on the ground of insufficiency of the evidence unless the lessees filed, within 20 days, a written remittitur of all sums in excess of $21,225 for their leasehold interest and the personal property. The same day, the trial court prepared, filed and signed[4] a memorandum of decision setting forth its view of the evidence and reasoning in granting the new trial. The pertinent portion of the memorandum of decision states:

[3]This is the amount of rent due under the unexpired 15-year term of the lease.

[4]This fact is set forth in the trial court's declaration added to the record on appeal, pursuant to the lessees' motion to produce additional evidence granted by this court on April 10, 1967.

"The lease, executed June 28, 1955, commenced September 1, 1955, for a term of 25 years, terminating in 1980. The monthly rent reserved was $350 per month, plus a percentage of the gross. The brake shop never yielded any such percentage and the car wash was diminishing to a point where very little could be expected in the future. The rent reserved under the remainder of the lease is $58,275[5] (date of take October 14, 1966, to end of lease August 30, 1980), excluding any bonus rent.

"Accepting plaintiff's testimony of a value of $80,000, weak as it is, and subtracting the rent reserved as we must, the highest supportable verdict would be $21,225.00.

"The motion for a new trial will be granted upon the ground of insufficiency of the evidence to justify the verdict unless the defendants (lessee) Santucci files, within twenty days from the date of service of notice hereof, a written remittitur of all sums in excess of $21,225.00 for his leasehold interest in the property and in the personal property taken herein."

Six days later, on November 9, 1966, the trial court signed a formal conditional order granting a new trial, prepared by the attorneys for the lessors. This document stated that the motion for a new trial was granted because there was an insufficiency of the evidence to justify a verdict in favor of the lessees for $75,000 since the lessors' testimony as to the value was doubtful and the evidence produced by the lessors was of sufficient weight to clearly establish that the verdict was excessive and because the jury did not consider and properly credit the lessors for the rent reserved under the lease. This appeal ensued.

The major question on appeal is the proper effect to be given to the above mentioned orders in view of the 1965 amendments to section 657 of the Code of Civil Procedure, set forth, so far as pertinent, in the footnote below.[6] Preliminarily, we note that neither the trial court at the time of the entry of its orders, nor the parties at the time of the filing of

---

[5]This figure is erroneous. The correct amount is in excess of $95,000 ($550 a month from November 1965, to August 1980).

[6]"When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated.

"A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision unless after weighing the evidence the court is convinced from the entire record, including

their briefs on appeal, had, as does this court, the benefit of the Supreme Court's first interpretation and discussion of these amendments in *Mercer* v. *Perez, supra,* and one of its companion cases, *Treber* v. *Superior Court, supra.*

In *Mercer,* the Supreme Court reversed an order for a new trial that adequately stated the grounds for granting the motion, insufficiency of the evidence, but wholly failed to specify the court's reasons for doing so. The court discussed at length the history and purposes of the new statutory requirements, stating at page 113: "As orders granting motions for new trial are infrequently reversed, *it is essential that they be the product of a mature and careful reflection on the part of the judge.* Society has a manifest interest in avoiding needless retrials: they cause hardship to the litigants, delay the administration of justice, and result in social and economic waste. (*Jehl* v. *Southern Pac. Co.* (1967) 66 Cal.2d 821, 828-829, fn. 9 [59 Cal.Rptr. 276, 427 P.2d 988].) Accordingly, one of the functions of the requirement of specification of reasons is *to promote judicial deliberation before judicial action,* and thereby 'discourage hasty or ill-considered orders for new trial.' (Review of Selected 1965 Code Legislation (Cont.Ed. Bar), p. 81.) This objective is furthered, *it bears emphasizing,*

---

reasonable inferences therefrom, that the court or jury clearly should have reached a contrary verdict or decision.

"The order passing upon and determining the motion must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk. *The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons.*

"On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons, provided, that the order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict or other decision unless such ground is stated in the order granting the motion; and provided further that on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive damages appearing to have been given under the influence of passion or prejudice, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons." (Italics supplied.)

The statute was again amended in 1967 to add "inadequate damages" as a ground for granting a new trial, and the language of the second and fourth paragraphs just quoted was slightly modified to reflect the change (Stats. 1967, ch. 72, § 1). For the sake of clarity, we shall discuss the statute in its 1965 version in the remainder of this opinion.

*by the change in the law which now forbids the judge from shifting to the attorney for the prevailing party the duty to prepare either the statement of grounds or the specification of reasons.*

"The second purpose of this requirement is to make the right to appeal from the order more meaningful." (Italics supplied.)

The court further stated at page 118: "As the motion for a new trial finds both its source and its limitations in the statutes [citation], the procedural steps prescribed by law for making and determining such a motion *are mandatory and must be strictly followed* [citations]" (italics added), and held at page 118, *that an order that failed to specify the reasons was not void, but the penalty for so doing was a conclusive presumption excluding that ground from appellate review.*

It is in the light of this holding that we must determine the effect of the fact that the formal conditional order for a new trial in the instant case was prepared by the attorney for the prevailing party and signed by the trial court. Although *Mercer* did not deal specifically with this portion of the statute, we think that, in view of the clear language of the statute and the above quoted language from *Mercer* indicating that the statute must be strictly construed, we are constrained to hold that the requirement that the trial court prepare its own order and specifications of reasons is mandatory, and following the guidelines set forth in *Mercer,* we further hold that the penalty for disregarding this portion of the statute is that we are precluded from considering on appeal the grounds of the insufficiency of the evidence and the supporting reasons set forth in the formal conditional order for a new trial.[7]

The above, however, does not totally solve the problem here presented. The formal conditional order also set forth another ground, an error of law predicated on the jury's failure to

---

[7]The lessees argue that the trial court's memorandum decision, although prepared 6 days before, should be considered to be the specification of reasons that the statute requires and indicates may be filed within 10 days after the filing of the order granting the new trial. We need not reach this question (nor whether we should look only at the minute order) as the only ground specified in the memorandum opinion and the minute order is insufficiency of the evidence, and even assuming, without conceding, that the memorandum could be considered as a specification of reasons, it is based on two misconceptions (as discussed in detail in the latter part of this opinion) i.e., that the reserved rent was to be subtracted from the fair market value and also the erroneous computation of the amount involved.

follow the instruction to subtract the reserved rent from the fair market value of the lessees' interest. In *Treber* v. *Superior Court, supra,* the court held that the specification of reasons requirement also applied to the ground of errors of law, but denied a writ of mandate to compel the vacation of such an order that failed to state the reasons, stating at pages 133 and 134: "In adjudicating an appeal from a new trial order predicated on that or any ground other than insufficiency of the evidence or excessive or inadequate damages, the reviewing court is governed by the fourth paragraph of the 1965 amendments to section 657: codifying the common law rule in this respect (see *Kauffman* v. *Maier* (1892) 94 Cal. 269, 275-277 [29 P. 481, 18 L.R.A. 124], followed in many cases), the statute declares that on such an appeal 'the order shall be affirmed if it should have been granted upon *any* ground stated in the motion, *whether or not specified* in the order or specification of reasons' (italics added). This court observed in *Kauffman* that 'A contrary rule might work great injustice,' explaining (at pp. 276-277 of 94 Cal.) that 'A party has the right to move for a new trial upon any or all of the grounds permitted by the statute, and if the record on which his motion is based discloses more than one ground for which a new trial should be granted, the court cannot, by stating in its order that the motion is granted upon one ground only, and denied upon the others, deprive the other party of the right to a review by this court of the entire record. . . . If there be any grounds upon which its action can be upheld, the order will be sustained, *irrespective of the particular ground given by that court,* whether in an opinion or by a statement in the order itself.' (Italics added.)

"Under this rule we have deemed ourselves bound to affirm a new trial order upon an error in law which was not only not the ground specified by the trial judge, but was apparently not even within his contemplation at the time of his ruling. (*Malkasian* v. *Irwin* (1964) 61 Cal.2d 738, 745-749 [40 Cal. Rptr. 78, 294 P.2d 822].) It follows that a failure of the trial judge to specify *any* ground—and *a fortiori* any reason for a ground actually stated—cannot be held to render the order void from its inception. The reviewing court remains under an express statutory duty to affirm such an order if the record will support any ground listed in the motion."

Thus, while the court's failure to follow the statutory mandate as to the preparation of the conditional order for a new trial prevents us from considering *insufficiency of the evi-*

*dence* as a ground, under *Treber, supra,* we are required to review the record and affirm the order, if it should have been granted on any other ground stated in the motion. As noted above, the motion was predicated on the usual additional statutory grounds of error of law, verdict against the law and excessive damages.

We turn first to the instruction telling the jury to subtract the reserved rent from the fair market value of the lessees' interest in the property. Both parties indicated in their briefs, and appellants conceded in oral argument, that under the circumstances here, this instruction, given in conjunction with the court's definition of fair market value, as set forth in the footnote below,[8] was error.

In a condemnation action, a tenant is entitled to a sum that will compensate him for his pecuniary loss as a result of the exercise of the power of eminent domain (4 Nichols Eminent Domain (3d ed.), 12.42(3)). It follows that a lessee is entitled to the fair market value of his leasehold interest in the part taken (*Costa Mesa Union School Dist. of Orange County* v. *Security First Nat. Bank,* 254 Cal.App.2d 4, 7 [62 Cal.Rptr. 113]). In determining fair market value, rent reserved and other terms of the lease would, of course, be weighed by any willing purchaser and are thus merely factors to be considered by the expert witnesses, and ultimately by the jury, in determining the *fair market value of the tenancy* (Evid. Code, § 817).[9] The error in subtracting the reserved rental from the fair market value is most clearly demonstrated by the figures set forth below, showing

[8]"The Lessees' compensable interest in the leasehold interest, if any, is its fair market value as I shall define it, less the amount of rent agreed to be paid by the Lessees. This for the reason the taking of the property by the Plaintiff discharges the Lessees' obligation to pay rent under the lease.

"When you have determined the value of these two items, you will award the amount thereof to the Lessees and award the balance of the award to the Lessors.

"The fair market value of the leasehold interest taken in this case is the highest price that would be paid in money by a willing purchaser from a willing seller with full knowledge of all the uses and purposes for which the leased property is adapted, allowing a reasonable time to find such purchaser with the lease exposed for sale in the open market."

[9]This provision, former Code of Civil Procedure section 1271.4 (added by Stats. 1965, ch. 1151) is now a part of the special portion of the new Evidence Code that sets forth the special rules of evidence applicable only to eminent domain proceedings. The statute is a partial codification of *People* v. *Dunn,* 46 Cal.2d 639, 641 [297 P.2d 964] (*People* ex rel. *Dept. Public Works* v. *Lynbar, Inc.,* 253 Cal.App.2d 870 [62 Cal.Rptr. 320]).

that in this case, the instruction leads to a minus verdict for the lessees.[10]

But we cannot uphold the conditional order granting the new trial on the basis of this erroneous instruction, since the error clearly favored the lessors who moved for the new trial. Furthermore, the error was corrected by the jury which apparently did not deduct reserve rentals but based its judgment for the lessees on their testimony of the *fair market value* of the lessees' interest. The court's memorandum of opinion supporting the conditional order for a new trial indicates that it was attempting to reinstate in the judgment the same erroneous concept contained in the instructions. Clearly, a new trial cannot be justified on an erroneous instruction which favored rather than prejudiced the movant and which the jury properly refused to apply (*Stoddard* v. *Rheem,* 192 Cal.App.2d 49 [13 Cal.Rptr. 496]; *Baron* v. *Sanger Motor Sales,* 249 Cal.App.2d 846 [57 Cal.Rptr. 896]).

The record reveals an additional error of law, not raised by either party, namely, the instruction to disregard the option. A lessee's option to renew a lease should be considered to the extent that the option enhances the value of the leasehold (*State of California* v. *Whitlow,* 243 Cal.App.2d 490, 496 [52 Cal.Rptr. 336]). However, as the option provided for a renegotiation of the monthly rental, the error was not significant. Furthermore, here again, had the error been of any consequence, it would have favored rather than prejudiced the movant-lessors and thus cannot justify granting them a new trial.

We next turn to the remaining ground set forth in the motion for a new trial, namely, that the verdict was "against the law" and "excessive." The words "against the law" do not import a situation in which the court weighs conflicting evidence and merely finds a balance against the judgment as in considering the ground of "insufficiency of the evidence."

[10]For example, accepting the lessors' evidence that the fair market value of the lessees' interest in the lease and personal property was $24,325, and subtracting therefrom even the trial court's erroneous reserved rent figure of $58,275 ($350 x 166.5), the result is a minus verdict. However, using the correct date of October 27, 1965 (instead of October 1966 used by the trial court), the relevant rental period is 178 months (from November 1, 1965, to August 31, 1980) and not 166.5 months, the basis of the court's figure. Second, using the correct minimum monthly rental of $550 (instead of the $350 erroneously used by the trial court), the correct total amount of rent reserved was in excess of $95,000. Subtracting this amount from the lessees' testimony of $81,000, the result is another negative figure.

The granting of a new trial on the ground that it was "against the law" is authorized only where there is no substantial evidence to sustain the verdict (*Thompson* v. *Guyer-Hays,* 207 Cal.App.2d 366, 375 [24 Cal.Rptr. 461]). Accordingly, we address ourselves to the question of whether there is any substantial evidence to support the judgment of $75,000 for the lessees' interest.

In an action for condemnation, the owner is a competent witness as to the fair market value of his interest (Evid. Code, § 813, subd. (a) (2),[11] *City of Gilroy* v. *Filice,* 221 Cal. App.2d 259, 268 [34 Cal.Rptr. 368]). The lessees testified that the fair market value of their interest was $81,000. This testimony alone would preclude the appellate court from finding that the judgment was "against the law," even though the lessees' acknowledged inexperience in the car wash business reflected on their testimony and might well have been determinative on the question of the "insufficiency of the evidence."

Furthermore, there was other evidence supportive of the lessees' judgment. The uncontroverted evidence indicated that the lessees had paid $75,000 for their total interest in 1963; that in 1964, they purchased $5,400 worth of new equipment; and that in 1962, their predecessor had realized a cash flow of $33,000. There was also uncontroverted evidence that in 1962 or 1963, one of the lessors acquired his one-fourth interest in the property for from $8,000 to $8,500.[12] Even accepting the testimony of one of the lessors' experts that such sales of fractional interests are often made at 50 cents on the dollar, the total value of the lessors' interest would have been only $68,000 at that time.[13]

Thus, clearly, there was some substantial evidence to sustain the verdict and it cannot be said to be "against the law." There being no basis for sustaining the order for a new trial on any ground other than "insufficiency of the evidence," which this court cannot consider because of the recent ruling in *Mercer* v. *Perez, supra,* the order appealed from is reversed.

Shoemaker, P. J., and Agee, J., concurred.

---

[11]Former section 1270, subdivision (a) (2) of the Code of Civil Procedure.

[12]$6,000 plus the assumption of his one-fourth share of the then existing loan which was either $8,000 or $10,000.

[13]$8,500 x 2 x 4 = $68,000.