[Civ. No. 36351. Second Dist., Div. One. June 13, 1972.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. AMERICAN SAVINGS & LOAN ASSOCIATION, Defendant and Appellant.

**8**

**COUNSEL**

Musick, Peeler & Garrett, George C. Hadley and Donald J. Drew for Defendant and Appellant.

John D. Maharg, County Counsel, and William F. Stewart, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

CLARK, J.—The County of Los Angeles (County) in 1952 leased for the restricted use as a golf course 175 acres of land from the predecessor in interest of American Savings and Loan Association (American). The County instituted condemnation proceedings to acquire fee simple title to the land. At the date of valuation (January 1968) the County's lease on the land sought to be condemned had approximately eight and one-half years to run. Dissatisfied with the judgment awarding it $5,462,860 pursuant to the verdict of the jury, American appeals.

■ American's principal complaint is that the trial court erred in determining the method by which American's interest should be valued. American's fee title to the land was encumbered by the County's lease. In these circumstances, expert appraisers are virtually in unanimous agreement on the method of valuing the lessor's interest. Typical is the formula described by Lawrence Sando, former president of the prestigious American Institute of Real Estate Appraisers and, interestingly enough, one of American's expert witnesses in the instant case:

"1) The present worth of the future net income which the lessor is to receive for the life of the lease. This is the discounted value of the income stream.

"2) The present worth of the value of the improvements at the expiration of the lease.[1]

"3) The present worth of the land at the expiration of the lease. The discounted value—called the reversion." (Lawrence Sando, Appraisal of Leasehold Interests, 3d Inst. on Eminent Domain (1961) 79, at p. 84.) In *State of California* v. *Whitlow* (1966) 243 Cal.App.2d 490 [52 Cal. Rptr. 336] the Court of Appeal for the Third Appellate District quoted an appraisal textbook which said that the value of the lessor's interest is: "(a) The present worth (discounted value) of the future net rents under the terms of the lease; in addition to (b) The present worth (discounted value) of the property at the end of the lease, which is called the reversionary value." The court said that "When those two rights and interests

---

[1]Reference is here made to improvements required to be made by the lessee which are to inure to the benefit of the lessor. In the instant case there were no improvements required to be made by the lessee and this element therefore was inapplicable.

were fairly evaluated and the sum representing such values paid, the condemnees [who owned a fee subject to an unexpired lease in the condemner] received the 'just compensation' to which they were constitutionally entitled."

The trial court in the instant case followed the quoted language from *Whitlow* in determining the method by which American's interest was to be valued. It did not, however, follow the procedure used by the trial court in *Whitlow* in which the jury was instructed to find the value of the Whitlows' encumbered fee ($55,076) and to subtract the second figure from the first to yield the value ($12,034) of "the present interest of the State of California [the condemner]" in the property subject to the lease. The Whitlows claimed that since the State of California was paying more in rent than the fair rental value of the property, the lessee's interest was actually valueless and the proper procedure would have been to subtract the value of the lessee's interest (zero) from the value of the unencumbered fee ($67,110) and award the difference ($67,110) to the Whitlows. The appellate court rejected the Whitlows' argument on the basis that the state was condemning only the lessors' interest, implying that the value of the lessee's interest was immaterial.

The trial court in the instant case termed the valuation of the state's interest in the *Whitlow* case "a lot of foolishness" (a conclusion with which it is difficult to disagree), determined "that we should go to it directly and value [American's] interest" and that this should be done by the appraisers "without regard for what their appraisal might be of [the County's leasehold] interest." The trial court did, however, require the jury to find the value of the fee as though it were unencumbered ($6,983,740) because the appraisers would necessarily start with the value of the unencumbered fee to arrive at the value of American's interest. Although it was unnecessary to require the jury to find that value, no harm was done and the figure serves to point up the crux of American's main contention.

American offered to prove (and we therefore assume it is true for the purpose of this appeal) that, since the fair rental value of the property restricted to use as a golf course was less than the rent which the County was obligated to pay under the lease, the County's interest was worthless. American maintains that if, for example, the state had condemned the property for a higher public use, the procedure would have been to award the fair market value of the property "as if owned by a single person, regardless of separate interests therein." (*People v. S. & E. Homebuilders, Inc.* (1956) 142 Cal.App.2d 105 [298 P.2d 53].) This is known as the "undivided fee" rule. Then the total award would have been divided between American and the County. The value of the County's interest would

have been ascertained (zero), subtracted from the total award of $6,983,740 and American would have received $1,520,880 more than it received in the instant case. American professes to be mystified why the result should be so different because the condemner is the lessee.

We think that the explanation lies in the assumption on which the undivided fee rule is based which is that the aggregate values of the individual separate interests in the property equal the value of the property as if it were owned by one person. This assumption is frequently not true. Suppose that a lot containing a residence has an easement for underground telephone lines over the back two feet. If the lot were unencumbered, it would be worth $40,000. It may very well be that a knowledgeable purchaser would pay $40,000 for the property even with the encumbrance. Yet the easement has a value to its owner. In the supposed case the aggregate values of the two separate interests exceed the value of the property as if it were owned by one person. On the other hand, the reverse may be true. A parcel of land if owned by one person might be worth $100,000. But if the oil rights and the right to use the surface for drilling are owned by another, the values of the two separate interests may be worth considerably less than $100,000.

If the assumption underlying the undivided fee rule is correct, it should make no difference which of two interests is first valued and then subtracted from the total value to yield the value of the second interest. In the case before us, if American's interest were first valued ($5,462,860) and subtracted from the value of the property as if unencumbered ($6,983,-740), the County would receive $1,520,880 for a worthless lease. In short, one of the two condemnees would be grossly overpaid by use of the unencumbered fee rule in such a case.

In contrast to the undivided fee rule is the rule that the condemner pays to the owner of each individual interest its fair market value regardless of whether the total payment is more or less than the value of the fee if it had been owned by one person. This is the approach taken by the court (division three) in *People* ex rel. *Dept. Pub. Wks.* v. *Lynbar, Inc.* (1967) 253 Cal.App.2d 870 [62 Cal.Rptr. 320]. If this rule had been applied in a condemnation proceeding instituted by the state to acquire American's and the County's interest (as well it might have been) American would have been paid exactly what it received in the instant case and the County would have received nothing. This reflects what would have happened in the open market. As American itself states in its closing brief, "It is ridiculous to suppose that [American] or another buyer *in the open market* would have to pay anything for [the County's] interest to combine

with [American's] interest for immediate development." It is equally ridiculous to suppose that a buyer in the open market, in the light of the existence of the County's unexpired lease, would have paid American the same amount as the property would have brought if unencumbered by the lease.

The "aggregate of the separate interests" rule is sometimes criticized as giving the condemner a windfall. But this frequently happens in the open market. If X owns one cufflink and Y owns one matching cufflink, Z may be able to buy each for $5 and end up with a pair of cufflinks worth $50. Land developers often buy several parcels of property each owned by a different individual and end up with a large developable area worth much more than the aggregate sum paid for the separate parcels.

Of greater concern is that condemners will be able to use whichever rule benefits them in a particular case because "California statutes, as well as court decisions, appear to support both the undivided fee and the aggregate of interests rules." (Note, *The Undivided Fee Rule in California* (1969) 20 Hastings L.J. 717, at p. 721.) This difficulty does not directly concern us here because the condemner is not acquiring two or more interests in the property and there is no need to decide which rule should apply. Nonetheless, we think that a strong argument could be made for application of the aggregate of interests approach if the state were the condemner here as in the hypothetical posed by American, in which case the compensation awarded American would be identical to that awarded here. American's complaint that the amount of compensation received depends upon the identity of the condemner is thus seen to depend on the assumption, which is not entirely warranted, that only the undivided fee rule would be applicable if the state were the condemner.

The valuation method employed in the instant case was correct. Since the jury did not find, nor may it be inferred from the verdict, what the County's leasehold interest was worth, there is no inconsistency in the jury's verdict.

█ American's second contention is that the length of the unexpired term of the County's lease and the amount of rental payable by the County to American should not have been considered by the appraisers in forming their opinions of the value of American's interest. This is based on subdivision (a) of section 822 of the Evidence Code which prohibits the use of the price or other terms of a property interest (the County's term for years) acquired by an entity which could have acquired the interest by eminent domain (as the County could have) to arrive at an opinion of the value of property (American's interest). The purpose of the sub-

division (3 Cal. Law Revision Com. Rep. (1961) p. A-11, at p. A-37) was to preclude use of the price or other terms that may have been acceded to by the transferor only because of the threat of condemnation.

The fact that the lease had over eight years to run was essential to the determination of the value of the reversion. But the length of the unexpired term of the lease had no bearing on the question of whether the County acquired its term for years for less than fair rental value. Subdivision (a) of section 822 of the Evidence Code thus does not preclude evidence of the existence and nature of a property interest (term for years, easement, right to remove minerals, etc.). The code provision does, however, literally preclude use of the rental figure. That figure was used solely to determine the amount to which American was entitled (the present value of the right to receive the rental called for in the lease) *in addition to* the value of the reversion. What American was entitled to receive was the present value of the rental specified in the lease, not some arbitrary rental figure plucked out of the air. Had the actual rental figure not been used, no other could have been used and American would have received only the value of the reversion. Thus American's contention is self-defeating. The California Constitution (art. I, § 14) assures that American will receive just compensation. No statute can be applied in such a way as to give American less than just compensation.

█ American's third contention is that if it was proper to consider the County's lease. the trial court should not have precluded American from showing terms of the lease other than the length and the rental to be paid. American, however, desired to show these terms to prove that the County's lease was worthless—a fact which was immaterial. The only matter in issue was the value of American's interest. The length of the lease and the rental called for were pertinent to that issue. The trial court indicated its willingness to allow evidence of any other term of the lease which bore on this issue, but American made no offer of proof in response to that invitation. There was no error.

█ American's fourth and final contention borders on the frivolous. It is that, since the County's original complaint described the interest sought as a fee simple, the County was required to pay American for the value of that interest even though American owned only a fee subject to an unexpired lease. American in its answer alleged the existence of the County's lease and the County, of course, offered no evidence to the contrary. Since the County could not acquire this leasehold interest from itself either in a condemnation proceeding or otherwise, the trial court did not err in permitting the County to amend its complaint prior to

the valuation trial to reflect that the interest being acquired was American's fee subject to the existing lease. American was in no way misled.

American's reliance upon *People* ex rel. *Dept. Pub. Wks.* v. *Shasta Pipe etc. Co.* (1968) 264 Cal.App.2d 520 [70 Cal.Rptr. 618] is misplaced. In that case the condemner first asserted its claim of ownership as against one of the condemnees long after the pleadings had framed the issues. The condemner was held bound by its complaint which failed to mention its claim of ownership. Here, by contrast, it was clear from the very beginning that the County's leasehold interest existed and no dispute thereafter arose about that fact.

The judgment is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing was denied July 10, 1972, and appellant's petition for a hearing by the Supreme Court was denied August 9, 1972. Peters, J., did not participate therein.