[Civ. No. 30858. First Dist., Div. Two. Mar. 27, 1973.]

THE PEOPLE ex. rel. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
AMSDEN  CORPORATION et al., Defendants and Appellants.

**COUNSEL**

Robert O. Wilhelm and Melvin B. Gross for Defendants and Appellants.

Harry S. Fenton, John P. Horgan, A. Matthew Raggio, William R. Edgar, and David W. Robinson for Plaintiff and Respondent.

**OPINION**

**TAYLOR, P. J.**—This is an appeal by the lessee (Amsden) and sublessee (Gemco) from a portion of a judgment in condemnation awarding $274,350 to the owners (Magrin) for a parcel of land in San Mateo County taken for freeway purposes by respondent State Department of Public Works (State). The main contentions are that the trial court abused its discretion in admitting the stipulation of Magrin and the State as to the fair market value of the property, and in excluding certain evidence at the valuation proceeding. We have concluded that there is no merit to any of the contentions raised by Amsden and Gemco.

Viewing the record in favor of the judgment, the following facts appear: The property in question was an unimproved parcel containing 134,800 square feet, of which 114,000 square feet were useable. The property had a frontage of about 375 feet on Coast Highway 1, and was zoned M-1. On May 19, 1968, the Magrins entered into a 50-year master ground lease with Amsden. No rental was due until June 1, 1971, more than a year after the commencement of this action on April 8, 1970, and none was

ever paid. The Magrin-Amsden master lease provided that the "true value" of the property as of May 1, 1968, was $270,000; and that in the event of condemnation, Magrin was to receive this amount, and Amsden any sum awarded in excess of $270,000. Amsden negotiated with Gemco for a sublease of 50,000 square feet for 48 years; no rent was due until June 1971 and none was ever paid. The sublease required Gemco to obtain the necessary financing within 150 days.

At the trial, the court, over objection, admitted the stipulation entered into between Magrin and the State that the fair market value of the property on April 8, 1970, was $274,350. Thereafter, Magrin did not participate in the proceedings.

Amsden's expert, Ingram, using the market data approach, based on the comparable sales method, but only on a single transaction, testified to a fair market value of $449,000. He opined that its highest and best use was a service station site. On cross-examination, however, Ingram stated that he did not believe the property could be sold for this amount because of its limited income potential. Amsden's witness Roth arrived at a fair market value of $490,000 based on two comparable sales and its highest and best use as a drive-in restaurant.

The State's expert Clevenger, using five comparable sales (in addition to the lease) and the income method, testified to a fair market value of $274,350, based on its highest and best use as industrial or commercial, and not dependent on automobile or foot traffic.

As to the sublease with Amsden, Gemco never made any effort to obtain financing within the 150 days allowed or obtained any sublessees. Although Gemco maintained that an oral extension of the 150-day financing provision had been obtained, Gemco asked its real estate broker to find another piece of property for the same project and subsequently executed a lease therefor. The financing provisions of the second lease were also ignored because of the financial reverses suffered by Gemco after its lease with Amsden fell through.

The jury arrived at a fair market value of $274,350 that was apportioned between the parties, pursuant to the lease.

■ Amsden's and Gemco's main contention on appeal is that the trial court abused its discretion in admitting into evidence the stipulation of Magrin and the State as: 1) the document was a settlement rather than a stipulation; 2) the admission of the document removed the question of fair market value from the jury and was contrary to *People* ex rel. *Dept.*

*Pub. Wks.* v. *Lynbar, Inc.,* 253 Cal.App.2d 870 [62 Cal.Rptr. 320]; 3) its prejudicial effect outweighed its probative value.

The record indicates that during the first pretrial proceedings before Judge Cohn, when the matter of the stipulation first came up, all parties indicated that the document was a stipulation. At the subsequent pretrial proceedings before the trial court, the matter was again extensively argued and discussed, prior to the court's determination that the stipulation would be admitted and the jury was cautioned that it was not binding on the tenants.

The basic element that distinguishes a compromise or settlement from a stipulation is the existence of a bona fide dispute between the parties (*Cannavina* v. *Poston,* 13 Wn.2d 182 [124 P.2d 787, 793]). Here, there was no dispute between the owner and the State; both agreed that the fair market value of the property was $274,350. Evidence Code section 813 permits a property owner to testify as to the fair market value of the property to be condemned. Amsden and Gemco chose not to call Magrin as a witness and, therefore, admitted by implication that Magrin would have testified in accordance with the stipulation.

Amsden and Gemco urge that the stipulation erroneously removed the issue of fair market value from the jury, citing *City of Los Angeles* v. *Oliver,* 102 Cal.App. 299, 332 [283 P.2d 298]; *McGee* v. *City of Los Angeles,* 6 Cal.2d 390, 393 [57 P.2d 925]; *Costa Mesa Union Sch. Dist.* v. *Security First Nat. Bk.,* 254 Cal.App.2d 4, 11 [62 Cal.Rptr. 113]; and *S.F. Bay Area Rapid Transit Dist* v. *McKeegan,* 265 Cal.App.2d 263, 271 [71 Cal.Rptr. 204]. The record indicates that the question is raised for the first time on appeal, as the only related objection made below was that Magrin was coerced into the stipulation,[1] clearly not a sufficient objection to preserve the issue now raised for the first time on appeal. We deem it our duty, however, to briefly discuss the cited cases.

The *Oliver* case is authority for the admitted rule that permits the parties in a condemnation proceeding to voluntarily stipulate to the fact of value of the property. *McGee* is not pertinent as the issue there was one of estoppel. *Costa Mesa* and our decision in *S. F. Bay Area Rapid Transit Dist., supra,* are likewise inapposite as both involved apportionment of condemnation awards and the amount of bonus value due to the lessee. In the instant case, Amsden was not deprived of the bonus value of its lease by the stipulation, but by the lease provision whereby Amsden agreed that in the event of condemnation, Magrin would receive $270,000 and

---

[1]As indicated above, Magrin was not called as a witness.

Amsden any additional amounts. By the lease provision, Amsden waived its rights to bonus value. A tenant may contractually waive his right to compensation (*State* v. *Oregon Investment Company*, 227 Ore. 106 [361 P.2d 71, 73, 96 A.L.R.2d 1137]) and an owner of condemned property may waive his right to compensation (*Conaway* v. *Yolo Water & Power Co.*, 204 Cal. 125, 131-132 [266 P. 944, 58 A.L.R. 674]).

*Lynbar, supra,* more fully discussed in another context below, does not bear on the question of the admissibility of the stipulation. *Lynbar* simply holds that at the valuation stage, all existing leases must be considered as the condemner must take the property in the condition in which it finds the property on the applicable date.

Amsden and Gemco concede that the jury was properly instructed that the stipulation was binding only on Magrin and the State, but citing Evidence Code section 352, urge that it should have been excluded as its probative value was outweighed by its prejudicial effect. This is not the proper test as the statute provides that a trial court has discretion to exclude evidence when there is a "substantial danger of undue prejudice." The record also indicates that the jury heard extensive testimony, contrary to the stipulation, from the Amsden-Gemco witnesses, Ingram and Roth, who testified to fair market value, almost twice that of the stipulation. Both Ingram and Roth based their estimates on a single sale. As indicated above, the stipulation was relevant, supported by ample substantial evidence, and properly admitted into evidence. We can find no abuse of discretion and do not deem it necessary to dignify with discussion the remaining contentions relating to the stipulation.

Amsden and Gemco next contend that the trial court erroneously limited the testimony of their expert to the rent provided for in the Magrin-Amsden lease and excluded the Amsden-Gemco sublease. They argue that their expert was, therefore, erroneously prevented from using the terms of the Asmden-Gemco sublease in the capitalization of income valuation method that he used. These contentions, like that discussed above, are simply another attempt to overcome the master lease provision that restricts the amount of Amsden and Gemco's recovery in the apportionment proceeding to amounts in excess of the $270,000 payable to Magrin.

The record indicates, however, that the issue controlling the admissibility of the sublease was whether there was a valid sublease, based on the oral extension, as Amsden and Gemco urged, or whether there was merely an offer to lease that never became an enforceable lease, as the State urged. The court, on the basis of *Lynbar, supra,* held that since the property had to be valued as the condemner found it, only the terms of the master lease

between Magrin and Amsden would be considered, as this was the only lease in existence on the valuation date. ■ This was in accord with the following applicable portion of *Lynbar,* at page 884: "There is nothing unfair to the condemnor in a divided fee situation in the rule which we followed in our original opinion in this case—that the condemnor must take the property it condemns in the condition in which it finds it at the date of valuation or condition. If the actual rent under the existing lease is above the fair market value of the parcel taken, ordinarily the fair market value of that parcel will be enhanced and the condemnor must pay more for it by way of just compensation. If, on the other hand, the actual rental under the existing lease is less than such fair rental value, ordinarily the fair market value of the parcel taken will be reduced accordingly and the condemnor then pays less by way of just compensation. In either event the condemnor pays for what it takes *in the condition* the parcel was on the date of valuation or condition."

■ Amsden and Gemco contend that a proper application of the *Lynbar* rule above to the instant case required a consideration of both the master lease and the sublease in the valuation phase of the proceedings. This contention, as indicated above, ignores the issue of whether the sublease was, in fact, in existence on the valuation date. The trial court's ruling here was correct in any event, as under *Lynbar,* for purposes of valuation, the price paid for the property is established by the existing lease. The existence of the sublease and the presence of any bonus value is left to the apportionment proceeding. For this reason, the trial court properly excluded the sublease but only after evidence had been received of its capitalization value. The court thus clearly ruled that the sublease could be used for valuation purposes, but that its precise terms were not relevant until the apportionment proceedings. Nor is there any merit in the argument that Evidence Code section 817 supersedes *Lynbar* as the court therein specifically referred to the statute (at p. 876) as a codification of *People v. Dunn,* 46 Cal.2d 639, 641-642 [297 P.2d 964], which held that the lease on the subject property had to be considered in arriving at fair market value.

Amsden and Gemco also contend that the trial court erroneously restricted cross-examination of the State's expert Clevenger on an offer made for comparable property. Evidence Code section 822, however, prohibits cross-examination on a mere offer, and clearly supersedes *People v. Union Machine Co.,* 133 Cal.App.2d 167 [284 P.2d 72], and the other cases cited, all decided before the January 1, 1967, effective date of the Evidence Code.

Finally, Amsden and Gemco complain that the trial court erroneously

sustained certain objections to the testimony of their witness Roth. We need not discuss these in detail as the record indicates that the trial court properly exercised its discretion in each instance, and was very lenient in even admitting the rebuttal testimony of Roth concerning the existence of peat on comparable parcels 2 and 3 after the State's expert Clevenger indicated that he did not consider the soil condition of these parcels and could not do so without additional information.

The portion of the judgment appealed from is affirmed. Costs to be borne by appellants.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied April 26, 1973, and appellants' petition for a hearing by the Supreme Court was denied May 23, 1973.