[No. A058609. First Dist., Div. One. May 11, 1994.]

NEW HAVEN UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant, v. TACO BELL CORPORATION, Defendant and Respondent.

**COUNSEL**

Quaresma, Benya, Hall, Connich, O'Hara & Nixon and David M. O'Hara for Plaintiff and Appellant.

Tobin & Tobin and Martin H. Orlick for Defendant and Respondent.

**OPINION**

**NEWSOM, J.**—New Haven Unified School District (School District), the plaintiff in an action to condemn a leasehold interest in Union City, California, appeals from a judgment awarding compensation to the lessee, Taco Bell Corporation (Taco Bell).

In 1989, School District announced plans to expand a high school within its jurisdiction by acquiring an adjacent shopping center along Alvarado Niles Road, a principal thoroughfare of Union City. Later that year, it filed a complaint in eminent domain against the owner of the shopping center, Howard Van Orden, Jr., and each of the tenants, including Taco Bell. The School District ultimately negotiated purchase of the underlying fee from the landlord, Van Orden.

Taco Bell had operated its restaurant in the shopping center under a long-term lease which was negotiated in 1975 between the predecessor of

Van Orden and another restaurant chain specializing in Mexican fast food. The lease extended to the year 2006, including one renewal period plus an option to extend for a further 10 years beyond 2006, and offered substantially below market rental. Taco Bell took over operation of the restaurant in 1983 after purchasing the other restaurant chain. The restaurant proved to be highly profitable under its management, earning operating profits of over $100,000 a year, and it owed part of its success to the favorable terms of the 1975 lease.

After receiving notice of School District's intention to acquire the restaurant, Taco Bell began a search for another site. Within two years, it succeeded in leasing an existing restaurant only .4 miles away at a prime location within the existing trade area—the intersection of Alvarado Niles Boulevard and Decoto Road, the two most heavily traveled streets in this part of Union City. In April 1991, it moved the restaurant to the new location. Though offering certain benefits, the relocation entailed a capital investment of $625,000 and required Taco Bell to enter into a lease with higher rental. At the time of trial, it appeared that the new restaurant would generate higher sales but incur additional operating costs.

The proceedings against Taco Bell came on for trial on January 7, 1992, before the Honorable Richard A. Hodge. Apart from the minor issue of trade fixtures, Taco Bell sought compensation for loss of goodwill. Two expert witnesses, Michael Elliot-Jones and Jeffrey Martin, valued the goodwill of the former restaurant location by projecting the anticipated cash flow of the restaurant to the year 2006—the end of the lease term. This figure was then discounted to arrive at a present value. By this method, Elliot-Jones valued the goodwill at $866,000; Martin put the value at $963,937. Both agreed that the forced relocation of the restaurant resulted in a complete loss of goodwill because of the relocation costs and higher expenses at the new location.

School District's expert witness, Aaron Amster, distinguished between goodwill enjoyed by the restaurant at the former location and the leasehold bonus value representing the value of the below market rental over the remaining lease term. He valued the goodwill at $205,000 and found that the restaurant retained goodwill worth $121,000 at the new location, resulting in a net loss of only $84,000. Through separate calculations, he assigned a value of $283,000 to the bonus value of the Taco Bell's favorable lease which was lost in the condemnation proceeding.

The trial court adopted the general approach of Taco Bell's experts but modified several assumptions to arrive at the value of $525,000 for lost

goodwill. The statement of decision did not assign a specific value to leasehold bonus value, or even distinguish between goodwill and leasehold bonus value, but it clearly reveals that the court included compensation for the loss of the favorable terms of the original lease in the compensation for loss of goodwill. The court separately awarded $59,000 for loss of trade fixtures resulting from the taking of the restaurant leasehold. In further orders, the court awarded to Taco Bell costs of $6,418.17, interest of $38,922.65, and litigation expenses of $229,859.98.

In its first assignment of error, School District insists on the distinction between leasehold bonus value and goodwill. Though the distinction may be academic in some cases, it assumes practical importance here because of a deleted provision of the 1975 lease referring to "bonus value." We will examine the distinction and then consider the lease provision.

"Historically, business goodwill was not an element of damages under eminent domain law. As recently as 1975, the California Supreme Court reaffirmed the principle that damage to a business conducted on property condemned for public use was not compensable as a property right under the just compensation clause of the California Constitution." (*Community Development Com.* v. *Asaro* (1989) 212 Cal.App.3d 1297, 1301 [261 Cal.Rptr. 231], fn. omitted.) A business lessee, however, did have certain rights of compensation; the cases held that ". . . a lessee is entitled to the fair market value of his leasehold interest in the part taken." (*S. F. Bay Area Rapid Transit Dist.* v. *McKeegan* (1968) 265 Cal.App.2d 263, 271 [71 Cal.Rptr. 204]; *County of San Diego* v. *Miller* (1975) 13 Cal.3d 684, 688 [119 Cal.Rptr. 491, 532 P.2d 139]; *Costa Mesa Union Sch. Dist.* v. *Security First Nat. Bk.* (1967) 254 Cal.App.2d 4, 10 [62 Cal.Rptr. 113].) The principle was first established in the early case, *Kishlar* v. *Southern Pacific R. R. Co.* (1901) 134 Cal. 636 [66 P. 848], which held: ". . . the measure of damages was the market value of the lease,—what, upon the evidence, it would bring if the plaintiff desired to sell, and a purchaser desired to buy and paid a fair price." (*Id.* at p. 638.)

As proof of market value, the *Kishlar* court admitted evidence of "what he [the lessee] paid as rental, and what the market value of the rental was, regardless of what he paid." (134 Cal. at p. 638.) A later decision, *City of Pasadena* v. *Porter* (1927) 201 Cal. 381, 385 [257 P.526, 53 A.L.R. 679], described this element of compensation as the "bonus value of the lease," the term generally employed in the legal literature. (6 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 18:83, p. 203, fn. 43.) The bonus value can be more precisely defined as the present value of the difference between economic

rent, i.e., the value of market rental, and the contract rent through the remaining lease term. (Horgan, *Some Legal and Appraisal Considerations in Leasehold Valuation under Eminent Domain* (1953) 5 Hastings L.J. 34, 36.)

The bonus value usually assumes importance only in long-term commercial leases. Condemnation of the leased premises serves to terminate a lease, releasing the lessee from further obligation to pay rental; thus, the value of the lost possession must be offset by the value of the cancelled rental obligation. In short-term leases, the lessee will have at best a small claim against the condemning authority. In long-term leases, which typically involve commercial properties, the lessee may still have no claim if the lease rental equals or exceeds the market rental. But the parties may sometimes miscalculate, or bargain away, increases in market rental over the lease term. Where this occurs in the negotiation of long-term leases, the lease bonus value may amount to a considerable sum. (See Goldberg et al., *Bargaining in the Shadow of Eminent Domain: Valuing and Apportioning Condemnation Awards Between Landlord and Tenant* (1987) 34 UCLA L.Rev. 1083, 1086-1092.)

A correlative rule limits the lessor's claim of compensation to the present value of the rental owing under the actual terms of the lease. "Thus, the measure of the value of the Lessor's interest is: (a) The present worth (discounted value) of the future net rents under the terms of the lease; in addition to (b) The present worth (discounted value) of the property at the end of the lease, which is called the reversionary value." (*State of California* v. *Whitlow* (1966) 243 Cal.App.2d 490, 498 [52 Cal.Rptr. 336]; *County of Los Angeles* v. *American Sav. & Loan Assn.* (1972) 26 Cal.App.3d 7, 9 [102 Cal.Rptr. 439].)

Whether or not the lessor and lessee are joined in a single proceeding (see Code Civ. Proc., § 1260.220), these rules will ordinarily result in an aggregate award to both lessor and lessee equal to market value of the property. Where the lease rental falls below market value, the lessor will have a claim to less than the full market value of the property, since he is restricted to the present value of actual contract rental; but the lessee will have a right to recover the balance of the market value, above that recovered by the lessor, as lease bonus value.

Recovery of business goodwill in a condemnation proceeding was first authorized in 1975 by the enactment of Code of Civil Procedure section 1263.510 as part of a comprehensive revision of eminent domain law. Subdivision (b) of section 1263.510 defines goodwill as follows: "Within the

meaning of this article, 'goodwill' consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage." While goodwill as so defined is conceptually distinct from leasehold bonus value, the statutory definition was construed in *People* ex rel. *Dept. of Transportation* v. *Muller* (1984) 36 Cal.3d 263 [203 Cal.Rptr. 772, 681 P.2d 1340], to allow recovery of goodwill on a confusingly similar theory: the benefits of location may include cheap rental.

The *Muller* decision concerned the valuation of goodwill associated with an incorporated veterinary practice. The founding member, Dr. Muller, leased a veterinary hospital to the practice for an annual rental of $25,000. Faced with eminent domain proceeding, he built another hospital at considerable cost within the same trade area. The practice experienced no decrease in patronage at the new location but paid much higher annual rental of $54,000 reflecting the high investment costs. Two expert witnesses valued the goodwill at the former location at $200,000 and $176,000. Since this amount was entirely absorbed by increased rental at the new location, they concluded that the goodwill of the practice had entirely disappeared. The jury agreed, awarding Dr. Muller $96,000 as compensation for loss of goodwill, and the Supreme Court affirmed. The court observed, "Dr. Muller has clearly lost a 'benefit' which accrued to the practice as a result of its former 'location.' He has lost the cheap rent in an older building which enabled his practice to show a profit." (*People* ex rel. *Dept. of Transportation* v. *Muller, supra*, 36 Cal.3d at p. 268.)

The *Muller* decision does not address the question of leasehold bonus value. Nothing in the opinion suggests that the practice leased the original hospital building at less than market value. Moreover, since Muller was the owner of the building, it would have been absurd for him to claim leasehold bonus value in his separate capacity as lessee, i.e., shareholder of the veterinary practice. The opinion instead deals with the benefits of location within the meaning of Code of Civil Procedure section 1263.510 and concludes that these benefits may include "cheap rent." While cheap rent may sometimes include an element of leasehold bonus value, the facts of the *Muller* decision did not present any issue of this kind.

With this analytical context in mind, we turn to the interpretation of the condemnation clause of the 1975 lease between the parties' predecessors in interest. As originally printed, the first subdivision of the clause, denominated paragraph 14.A., gave the lessee the right to recover for loss of bonus value: "Lessee shall have the right to recover for loss of bonus value, prepaid

rents, if any, and the then present worth of remaining use of leasehold fixtures and improvements installed by Lessee." Prior to signing, the parties deleted the phrase "bonus value" and initialed the deletion.

School District infers that the purpose of the initialed deletion was to give the lessor the right to recover the full market value of the property in the event of condemnation. The lease term, with renewal options, extended for 30 years; the lessor could easily foresee the possibility that the rental would all below market, giving the lessee the right to recover bonus value. The compensation for the market value of the property would then be divided between lessor and lessee. The lessor had an incentive to avoid this result. The deletion of the phrase "bonus value" was intended to effect an assignment of this element of damages to the lessor, guaranteeing the lessor a right to the actual market value of the property.

Taco Bell has offered no other explanation for the revision but argues that the parties' intention was too obscurely expressed to effect an actual assignment of the lessee's damages to the lessor. The statement of decision adopts this rationale. The court observed that the clause "is hardly a model of clarity" and continued: "The issue is whether paragraph 14-A represents the exclusive remedy of the lessee against the condemning agency, impliedly reserving all other proceeds to the lessor. The Court cannot justify such an expansive interpretation from such a paucity of clear expression. . . . The Court cannot, from such limited expression, construct an intention to limit the lessee's rights to compensation for loss of fundamental property rights."

Implicit in the court's view is a policy of judicial disfavor toward contractual allocation of damages in eminent domain proceedings. One can indeed find authority for such a policy in certain other jurisdictions. (E.g., *Pennsylvania Ave. Dev.* v. *One Parcel of Land, etc.* (D.C. Cir. 1981) 670 F.2d 289 [216 App.D.C. 131].) But it is inconsistent with modern commercial practices. "[L]ong-term commercial leases routinely . . . include so-called 'condemnation clauses' that specify how condemnation awards should be apportioned between landlord and tenant." (Goldberg et al., *Bargaining in the Shadow of Eminent Domain: Valuing and Apportioning Condemnation Awards Between Landlord and Tenant, supra,* 34 UCLA L.Rev. 1084, fn. 1) Moreover, it finds no support in California law. (*Enos* v. *Foster* (1957) 155 Cal.App.2d 152 [317 P.2d 670]; *Dix Box Co.* v. *Stone* (1966) 244 Cal.App.2d 69 [52 Cal.Rptr. 847].)

A pertinent decision, *City of Beverly Hills* v. *Albright* (1960) 184 Cal.App.2d 562 [7 Cal.Rptr. 706], holds that tenants may divest themselves

of the right to condemnation proceedings by a lease provision assigning damages to the lessor. The lease provided: " '. . . Lessee hereby assigns to Lessor his rights to any and all damages for property taken in any such [eminent domain] proceeding and all such damages shall be payable to lessor.' " (*Id.* at p. 564.) The court affirmed a judgment denying the tenants' claim of damages for the taking of trade fixtures. On the assumption that the trade fixtures were part of the realty, the court found that the tenants had "divested themselves" of any right to compensation "by previous assignment" to the lessor (*id.* at p. 567) and therefore retained "no compensable interest" in the fixtures. (*Id.* at p. 569.)

Again, in *People* ex rel. *Dept. Pub. Wks.* v. *Amsden Corp.* (1973) 33 Cal.App.3d 83 [109 Cal.Rptr. 1], the court upheld a lease provision that was tantamount to an assignment of the bonus value of the lease to the lessor. A 50-year ground lease provided that in the event of condemnation the lessor would receive $270,000, a sum representing a stipulated market value of the property, and the lessee would receive any sum in excess of this amount. The jury awarded compensation of $274,350 which was apportioned between the parties pursuant to the lease. Affirming, the court held "Amsden [lessee] was not deprived of the bonus value of its lease by the stipulation, but by the lease provision whereby Amsden agreed that in the event of condemnation, Magrin [lessor] would receive $270,000 and Amsden any additional amounts. By the lease provision, Amsden waived its rights to bonus value. A tenant may contractually waive his right to compensation . . . ." (*Id.* at pp. 87-88.)

At the time the present clause was drafted, it was just as reasonable for the lessor to seek a right to compensation for the full market value of the property in the event of condemnation as it was for the lessee to seek a right to recover leasehold bonus value. ▪▪▪ Our task, therefore, is to determine what the parties intended, unencumbered by any policy favoring one interpretation or the other.

There can be no question that the lessee waived a right to recover bonus value of the lease; the term "bonus value" was deleted in a sentence beginning "[l]essee shall have the right to recover for loss of . . . ." Taco Bell objects that it requires a "startling leap" to infer that the parties intended to assign the element of damages to the lessor. To the contrary, we think such an intention can easily be inferred. By waiving the right to recover bonus value, the lessee could intend either to surrender this right to the public agency or to assign it to the other party to the transaction. Obviously the latter interpretation is more plausible. Furthermore, the waiver should

have this result independently of the parties' intention. Where the contract rental is below market value, the lessor's right of recovery is limited by the contractual rights of the lessee; by surrendering any right to recovery based on these contractual rights, the lessee gives the lessor the full bundle of rights in the event of condemnation and removes any impediment for the lessor to recover the full market value.[1]

As a court of review, we are obliged to make an independent determination of the meaning of the lease provision. It is true that Taco Bell introduced some extrinsic evidence on the issue of interpretation. The executive who had negotiated the lease for the lessee, Marvin Bonine, testified that he did not recall considering the condemnation clause and did not think he had waived any right to damages. But we consider that the case still comes within the principle of *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839], that it is "a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Id.*, at p. 865.) Bonine's testimony was undisputed and of marginal relevance; it was of little interest that he could remember nothing about the amendment to the condemnation clause. Even if we indulge in every reasonable inference that can be drawn from this evidence, the waiver issue cannot be reasonably construed as turning on the credibility of such insubstantial evidence.

We conclude that the trial court erred in failing to deduct the amount of the leasehold bonus value from the award of $525,000 as compensation for lost goodwill. While the expert witness for School District put a value of $283,000 on the leasehold bonus value, the court made no finding on this issue. The case therefore must be remanded for the limited purpose of determining the amount of the bonus value so that the judgment can be reduced accordingly.

In a second assignment of error, the School District calls our attention to an error in valuing fixtures. The School District obtained an appraisal of the various trade fixtures found at the former restaurant which Taco Bell accepted, and the total value was put at $64,590. Most of the fixtures were removed or destroyed before School District took possession: a quantity of fixtures were sold to a salvage dealer for about $1,200; fixtures worth about $4,000 were taken to the relocated restaurant; and other fixtures were

---

[1]The record suggests that the lessor, Van Orden, in fact negotiated an award of compensation based on the full market rental the property.

discarded. School District assigns a value of $16,650 to the fixtures remaining in place at the time the School District took possession.[2] The trial court awarded compensation of $59,000—a figure apparently based on the total value of the fixtures less the salvage proceeds and the value of fixtures moved to the new location.

Code of Civil Procedure section 1263.230 clearly disallows compensation for fixtures which the defendant removes from the premises before the condemnor takes possession: "(a) Improvements pertaining to the realty shall not be taken into account in determining compensation to the extent that they are removed or destroyed before the earliest of the following times: . . . [¶] (2) The time the plaintiff takes possession of the property. [¶] . . . (b) Where improvements pertaining to the realty are removed or destroyed by the defendant at any time, such improvements shall not be taken into account in determining compensation." Accordingly, Taco Bell lost its claim for compensation for those fixtures which it discarded, sold to the salvage dealer, or removed to another restaurant. It is entitled to compensation only for the fixtures which remained in place.

■ Next, School District complains that the trial court chose an improper date for the award of prejudgment interest. Indeed, the court-ordered date, August 1, 1991, has no possible statutory reference. Without defending this date, the parties argue that the court should have chosen an earlier or later date.

Taco Bell vacated the premises early in April 1991. At the time, Van Orden still held title to the property. The School District was then interested in extending the lease with either Taco Bell or another tenant since it had no immediate need for the property. Taco Bell did not notify the School District of its plans to vacate the premise or respond to requests for information. After the premises had remained vacant for about eight months, the School District finally consummated its purchase of the property from Van Orden on December 26, 1991.

Taco Bell maintains that prejudgment interest should run from April 1, 1991, the date it abandoned the premises. However, Code of Civil Procedure section 1268.310 provides that compensation shall draw interest from the earliest of three relevant dates. Under the present record, the earliest of these dates is "[t]he date the plaintiff takes possession of the property." School

---

[2]Taco Bell accepted School District's appraisal on which the figure of $16,650 is based, but the precise valuation of fixtures remaining in place may still be subject to certain minor disputes. Three categories of fixtures, valued as a unit, were partially removed, presenting a need to allocate the appraised value between discarded fixtures and fixtures in place.

District cannot be viewed as taking possession before December 26, 1991, the date it purchased the property, and it does not claim any later date for the commencement of interest. Accordingly, we find that the trial court erred in calculating interest from a date prior to December 26, 1991.

■ Lastly, School District challenges the award of litigation expenses to Taco Bell pursuant to Code of Civil Procedure section 1250.410. Subdivision (a) directs the condemner and defendant to file with the court a final offer or demand at least 30 days prior to trial. Subdivision (b) provides: "If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed . . . shall include the defendant's litigation expenses."

Under the statute, ". . . the court must find *both* that the owner's demand was reasonable *and* that the agency's offer was unreasonable." (*Santa Clara Valley Water Dist.* v. *Gross* (1988) 200 Cal.App.3d 1363, 1368 [246 Cal.Rptr. 580].) The reasonableness of the demand and offer "are factual issues to be evaluated by the trial court, and its determination of reasonableness or unreasonableness must be upheld on appeal if supported by substantial evidence." (*Community Redevelopment Agency* v. *Krause* (1984) 162 Cal.App.3d 860, 866 [209 Cal.Rptr. 1].)

The record discloses that, pursuant to Code of Civil Procedure section 1250.410, Taco Bell made a final demand of $1,067,590, and School District made a final offer of $585,000. The trial court awarded compensation of $525,000 for lost goodwill and $59,000 for the fair market value of trade fixtures, plus interest. Both these amounts must be sharply reduced in conformance with this opinion.

We see no basis for finding School District's offer to be unreasonable. It almost precisely equaled the trial court's actual award, excluding interest, and it will substantially exceed the final award after deduction of leasehold bonus value and revision of compensation for fixtures. Taco Bell objects that School District improperly characterized the damages in its offer. The offer places the sum of $585,000 under the heading "real estate" and states that it "does not include any element of goodwill." However, this classification of the elements of compensation did not affect Taco Bell's interests in any way and is entirely immaterial; the reasonableness of the offer should be determined on the basis of the actual sum of money offered as compensation.

We also find no support in the record for the finding that Taco Bell's demand was reasonable. It is true that Taco Bell supported its analysis with

four highly qualified expert witnesses and sophisticated analyses. The trial court may consider " 'the good faith, care and accuracy in the determination' " of offer and demand. (*City of El Monte* v. *Ramirez* (1982) 128 Cal.App.3d 1005, 1012 [180 Cal.Rptr. 690]; see also *Community Redevelopment Agency* v. *Krause, supra,* 162 Cal.App.3d 860, 866; *People* ex rel. *Dept. of Transportation* v. *Societa Di Unione E Beneficenza Italiana* (1978) 87 Cal.App.3d 14, 23 [150 Cal.Rptr. 706].) But the trial court's award here was only about one-half the amount of the demand and must be reduced further. We have found no precedent for awarding litigation expenses where the demand is so disproportionate to the actual award. Indeed, *City of Gardena* v. *Camp* (1977) 70 Cal.App.3d 252, 257 [138 Cal.Rptr. 656], held that the condemnor's offer of less than 60 percent of the value of the award constituted an unreasonable offer.

The judgment is reversed and the case remanded for further proceedings in accordance with this opinion. Costs to appellant.

Strankman, P. J., concurred.

**STEIN, J.,** Concurring and Dissenting.—I respectfully dissent from that portion of the opinion which concludes that the trial court incorrectly awarded compensation for loss of the bonus value of the lease to the lessee, Taco Bell. I concur in all other aspects of the opinion.

I.

*Absent a Specific Provision in the Lease, Upon Condemnation Compensation for the "Bonus Value" Should Be Awarded to the Lessee*

Upon condemnation, unless the lease provides otherwise, the lessee is entitled to compensation for the loss of his leasehold estate. (Code Civ. Proc., § 1260.220, subd. (a).) The value of the lessee's interest is measured by "the difference between the amount of rent he is obligated to pay under the lease for the remainder of the term and the amount the lease would bring at a sale in the open market." (6 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 18:83, p. 203.) This difference is ordinarily described as the " 'bonus value' of the lease." (See 4 Nichols, Eminent Domain (rev. 3d ed. 1994) § 12D.04[4](2), 12D-60.) The majority opinion recognizes this general

rule[1] but concludes that this lease awards the right to recover "bonus value" to the landowner. They find implicit in the trial court's award of these damages to Taco Bell a "policy of judicial disfavor toward contractual allocation of damages in eminent domain proceedings." (Maj. opn., *ante*, p. 1481.) They reverse the trial court after finding its policy "inconsistent with modern commercial practices" (maj. opn., *ante*, p. 1481) and California cases awarding bonus value on condemnation to the landowner.[2]

The trial court's decision is not based on a policy, but rather on a finding of fact that there is no specific provision in this lease reserving bonus value to the lessor. The record supports this finding. Mr. Bonine, the agent who negotiated the lease for the lessee, testified that he never assigned Taco Bell's rights to recover goodwill to the owner in the event of condemnation; nor did the lease give up any rights of the lessee against the condemning authority. As the majority notes, there is conflicting evidence. A specific provision in a draft of the lease awarding "bonus value" to the lessee in the event of a condemnation of the whole property was deleted. However, when faced with a conflict in the evidence " '[a]n appellate court is without power to judge the effect or value of the evidence, weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may by drawn therefrom.' " (*Smith* v. *County of Santa Barbara* (1992) 7 Cal.App.4th 770, 776 [9 Cal.Rptr.2d 120]; *Kimble* v. *Board of Education* (1987) 192 Cal.App.3d 1423, 1427-1428 [238 Cal.Rptr. 160].) We are required to draw all presumptions in favor of the trial court's determination and review the record in the light most favorable to the judgment. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 927 [148 Cal.Rptr. 389, 582 P.2d 980]; *Fortman* v. *Hemco, Inc.* (1989) 211 Cal.App.3d 241, 259 [259 Cal.Rptr. 311].) Any conflicts in the evidence, including conflicting inferences, should be resolved in favor of the judgment and the prevailing party. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]; *Gray* v. *Fox* (1984) 151 Cal.App.3d 482, 487 [198 Cal.Rptr. 720].) Since the testimony of Mr. Bonine is sufficient to support the trial court's finding that there is no specific provision in this lease regarding the award of damages for "bonus value" on condemnation, I would uphold the trial court's application of the general rule awarding these damages to the lessee.

---

[1] "[T]he lessee will have a right to recover the balance of the market value, above that recovered by the lessor, as lease bonus value." (Maj. opn., *ante*, p. 1479.)

[2] In each of the cases cited, the lease specifically assigned bonus value on condemnation to the lessor. (*People* ex rel. *Dept. Pub. Wks.* v. *Amsden Corp.* (1973) 33 Cal.App.3d 83, 86 [109 Cal.Rptr. 1]; *Dix Box Co.* v. *Stone* (1966) 244 Cal.App.2d 69, 70-71 [52 Cal.Rptr. 847]; *City of Beverly Hills* v. *Albright* (1960) 184 Cal.App.2d 562, 564 [7 Cal.Rptr. 706].)

## II.

*The Lessee Did Not Waive the Right to Recover Damages for Bonus Value*

Section 14 of this lease concerns the lessee's rights upon condemnation. Reference to the lessee's right to recover for loss of "bonus value" was deleted from subsection A, which concerned condemnation of the whole property. The majority opinion concludes that "[t]here can be no question that the lessee waived a right to recover bonus value of the lease" when that term was deleted from the lease. (Maj. opn., *ante*, p. 1482.) I do not find the record that compelling. The lessee retained that right to recover damages for loss of bonus value in the event of a "partial take, remainder usable." (Lease § 14, subd. (C).) The provisions of this lease concerning damages for bonus value must be given a reasonable interpretation. (Civ. Code, § 1643.) I can find no reasonable explanation for why the lessee would waive these damages upon condemnation of the whole premises, but reserve them in the event only a portion of the leased premises were taken.

At the time this lease was entered into, December 16, 1975, there was uncertainty in the law as to the effect of below market rent in evaluating a condemned property. If the actual rental under the existing lease was less than fair rental value, then "the fair market value of the parcel taken will be reduced accordingly and the condemnor then pays less by way of just compensation." (*People* ex rel. *Dept. Pub. Wks.* v. *Lynbar, Inc.* (1967) 253 Cal.App.2d 870, 884 [62 Cal.Rptr. 320].) When the property to be condemned consisted of a fee and leasehold interests, there was confusion as to how it was to be valued. Some courts used the "undivided fee" rule while others used the " 'aggregate of the separate interests' " rule. (*County of Los Angeles* v. *American Sav. & Loan Assn.* (1972) 26 Cal.App.3d 7, 11-12 [102 Cal.Rptr. 439].) There were also questions about the lessee's right to recover for the loss of goodwill in the event of condemnation. (*Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 825 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174].) Code of Civil Procedure section 1263.510, requiring compensation for loss of goodwill, although enacted in 1975, was not effective until July 1, 1976. (Stats. 1975, ch. 1275, § 2, p. 3453.) It was not until 1984 that the courts recognized that the value of below-market rate rent could be recovered as an element of lost goodwill. (*People* ex rel. *Dept. of Transportation* v. *Muller* (1984) 36 Cal.3d 263, 272 [203 Cal.Rptr. 772, 681 P.2d 1340].)

The only difference under this lease between condemnation of the whole premises and only a part, with the remainder usable, is that the former

terminates the lease. (Lease § 14, subds. (A) & (C).) Section 14 of this lease ends with the provision that: "The above rights of Lessee shall be in and to the compensation otherwise payable to Lessor. Termination of this lease as a result of condemnation shall not, however, affect the rights of the respective parties to such award." I would therefore interpret these provisions of the lease to mean that if there is a condemnation of the whole premises, the lease terminates and the landowner will recover from the condemner the full value of all interests taken. Any portion of that award which represents bonus value of below market rent would be owed to the lessee by the landowner. In the event of a partial taking where the remainder is usable, the lease does not terminate so the landowner is not involved in the condemnation. The lessee in this situation will recover damages for bonus value directly from the condemner.

## III.

### *The Lease Terms Regarding Bonus Value Have No Application to the Lessee's Claim for Loss of Goodwill*

As noted above, it is now recognized that the lessee may recover for lost goodwill (Code Civ. Proc., § 1263.510), which may include as an element the bonus value to the business of below market rent. (*People* ex rel. *Dept. of Transportation* v. *Muller, supra,* 36 Cal.3d at p. 272.) Compensation for the loss of goodwill is payable only to "[t]he owner of a business conducted on the property taken." (Code Civ. Proc., § 1263.510, subd. (a).) The only limitation on compensation for loss of goodwill, which could involve the terms of the lease between the business owner and the landowner, is the proscription that "[c]ompensation for the loss will not be duplicated in the compensation otherwise awarded to the owner." (Code Civ. Proc., 1263.510, subd. (a)(4).)

If the school district has been required to pay the bonus value of this lease twice, once to the landowner as fair market value of the property and once to Taco Bell as goodwill, it is not the fault of the trial court. Rather, this result stems from the school district's decision to settle the value of the landowner's interest separate from the lessee's. Normally the condemnor does not consider the separate interests in the property but treats it as though under a single ownership. Once the total compensation has been fixed, the landowner and the lessee establish the value of their respective interests and the total award is apportioned between them. (Code Civ. Proc., § 1260.220, subd. (b).) By settling separately with the landowner, the school district assumed the risk that it might be required to pay more than the total value of

the property if the trial court did not agree with the landowner's contention that he was entitled to be compensated as though the property were leased at market value.

A petition for a rehearing was denied June 10, 1994, and respondent's petition for review by the Supreme Court was denied August 11, 1994.